FILED
 2010 Jun-21  PM 03:07
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **TASHA C. STRICKLAND,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 5:09-CV-0675-RDP |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

Plaintiff Tasha C. Strickland brings this action pursuant to Sections 205(g) and 1613(c)(3) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). *See* 42 U.S.C. §§ 405(g), 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed.

**I.    Procedural History**

Plaintiff filed her applications for disability, DIB, and SSI under Titles II and XVI of the Act on April 11, 2007.[1] (Tr. 32). Plaintiff's applications were denied on June 18, 2007. (Tr. 32-38).

---

[1] Plaintiff initially alleged that her period of disability began on June 1, 2003, but amended her alleged onset date to April 11, 2007. (Tr. 47-49, 59). By amending her onset date to April 11, 2007, a date after her insured status expired, Plaintiff in effect requested a dismissal of her request for hearing concerning her application for a period of disability and DIB. Accordingly, the ALJ dismissed Plaintiff's request for hearing concerning her application for a period of disability and DIB, thereby making the initial determination of denial dated June 18, 2007, the final decision. Plaintiff elected to proceed with her claim for SSI as of the protective filing date of April 11, 2007. (Tr. 15). 20 C.F.R. § 404.957 (an ALJ may dismiss a request for hearing any time on or before the

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on July 19, 2007. (Tr. 39). A hearing was held before ALJ Earl Cites on September 3, 2008. (Tr. 408-44). In his October 22, 2008 decision, the ALJ determined that Plaintiff suffers from the following impairments: status post fusion of the cervical spine, degenerative disc disease, status post derangement/strain of the left knee, and carpal tunnel syndrome. (Tr. 16). Although severe in combination, it was the ALJ's finding that none of these impairments, singly or in combination, are severe enough to meet one of the impairments listed in App'x 1 of 20 C.F.R. § 416.920(d), 416.985 and 416.926. (Tr. 19). The ALJ further determined that Plaintiff was capable of performing a number of light exertional jobs and had the residual functioning capacity ("RFC") to make a successful adjustment to other work that exists in significant numbers in the national economy. (Tr. 22). Based on these findings, the ALJ subsequently determined that Plaintiff was not disabled as defined under the Act. (*Id.*). Plaintiff requested a review of the ALJ's decision on November 26, 2008. (Tr. 398). The Appeals Council denied Plaintiff's request for review on February 5, 2009. (Tr. 5-8). On April 6, 2009, Plaintiff filed a complaint for civil action, requesting judicial review of the ALJ's decision. (Doc. # 1).

Plaintiff was born on January 22, 1975, and obtained her GED in 1990.[2] (Tr. 69, 418). Plaintiff was previously employed in a variety of jobs as both a waitress and a cook during the time period of 1991 until June 2003.[3] (Tr. 79). Plaintiff's medical records relating to her alleged inability to work date back to August 1997. (Tr. 314-67). Plaintiff claims she is unable to engage in

---

notice of decision is mailed if the claimant requests such dismissal.).

[2] 1990 is the approximate date of her GED completion. (Tr. 77).

[3] Additionally, Plaintiff worked briefly as a waitress in 2005. (Tr. 419).

substantial gainful activity due to arthritis, carpal tunnel, bulging discs, ruptured disc, scar tissue causing abdominal pain from a hysterectomy, and problems from a gall bladder removal. (Tr. 65). Plaintiff's medical diagnoses include bilateral carpal tunnel, lumbar herniated nucleus pulposus, chronic lumbar pain, cervical herniated nucleus pulposus, chronic cervical pain, and post-cervical surgery. (Tr. 172-84). Plaintiff testified that the pain resulting from these medical problems has significantly reduced her ability to work since Spring 2004. (Tr. 426-38).

Dr. John Waddell and Dr. Ernest Hendrix treated Plaintiff for abdominal issues at Athens-Limestone Hospital from August 1997 until November 2003. (Tr. 314-67). On January 21, 2002, Dr. Hendrix performed a bilateral tubal ligation on Plaintiff. (Tr. 322). During a recheck appointment of her surgery on January 28, 2002, Plaintiff again complained of pelvic pain. (Tr. 321). Dr. Hendrix predicted that Plaintiff might have endometriosis. (Tr. 318-23). Plaintiff was treated with Effexor and Diazepam for these issues. (*Id.*).

From April until September 2004, Dr. Todd Treimer of Athens-Limestone Hospital treated Plaintiff for abdominal pain and bladder problems. (Tr. 296-313). In April and May 2004, Dr. Brenda A. Savage-Edwards of Rehabilitation and Neurological Services, LLC treated Plaintiff for pain, numbness, and tingling in the arms. (Tr. 110-16). Dr. James C. O'Brien of O'Brien Orthopedics treated Plaintiff from November 2004 until August 2008 for back, leg and cervical pain, and carpal tunnel. (Tr. 128-53, 172-84). Doctors at O'Brien Orthopedics diagnosed Plaintiff with bilateral carpal tunnel, lumbar herniated nucleus pulposus, chronic lumbar pain, cervical herniated nucleus pulposus, and chronic cervical pain. (*Id.*). Plaintiff was prescribed Percocet and Soma during this time frame and also took Ibuprofen on a regular basis. (*Id.*). On two occasions Dr. Rafael at O'Brien Orthopedics treated Plaintiff for carpal tunnel, chronic lumbar pain and chronic

3

cervical pain. (Tr. 172-75). Plaintiff was advised by doctors at O'Brien Orthopedics that further surgery would not be beneficial, did not recommend more aggressive treatment, and advised Plaintiff that she would have to live with some pain and should ambulate to pain tolerance and avoid activities that increase her pain. (Tr. 128-54, 171-84).

From November to December 2005, Dr. Rhett B. Murray of Huntsville Hospital performed an anterior cervical discectomy and fusion on Plaintiff and also fitted her with an Orion plate. (Tr. 118, 120). Dr. Murray determined that Plaintiff has radiculopathy and also a herniated disc in her cervical spine. (Tr. 124-25). Dr. Murray performed surgery to correct Plaintiff's herniated disc, and a month after surgery, he reported that the pain in her arms had improved and that x-rays showed good positioning of the spine. (Tr. 122). Dr. Murray also indicated that Plaintiff could begin driving after surgery and should be able to lift up to ten pounds. (*Id.*).

As part of an initial disability determination completed by the State Agency on June 18, 2007, medical consultant Maria Johnson performed an RFC assessment of Plaintiff and ultimately diagnosed Plaintiff with disorders of the back. (Tr. 32, 155-62). Johnson determined that Plaintiff was not disabled at any time through September 2003 when Plaintiff was last insured for disability benefits. (Tr. 33). Johnson also determined that although Plaintiff was somewhat restricted during her claimed period of disability, her condition did not prevent her from performing past work. (*Id.*).

Plaintiff made several visits to the emergency room at Athens-Limestone Hospital between May 2006 and January 2008. (Tr. 185-295). Plaintiff was treated by Dr. Douglas B. Moore for lower back pain in May 2006. (Tr. 285-95). Dr. Moore diagnosed Plaintiff with sciatica and opined that her problem could be treated with ice massages and that surgery was probably unnecessary. (*Id.*). Plaintiff saw Dr. Dunn in August 2006 and was administered a lumbar epidural steroid

injection. (Tr. 266-84). Plaintiff was administered another epidural steroid injection by Dr. Dunn in April 2007. (Tr. 186). Plaintiff was also seen by Dr. Steven Crouch in April 2007 for lower back pain. (Tr. 228-39). Dr. Crouch recommended rest and ice massages to treat Plaintiff's back problems. (Tr. 237). In June 2007, Dr. Laura Dyer treated Plaintiff for a chest contusion and neck strain resulting from slipping in the bathtub. (Tr. 213-27). Dr. Dyer prescribed Albuterol, Medrol, Lorcet Plus, and Skelaxin, and recommended that Plaintiff treat her injuries with ample rest and ice therapy. (Tr. 220-21). In September 2007, Plaintiff was treated by Dr. Dyer for derangement and strain of the knee. (Tr. 197-206). Dr. Dyer advised Plaintiff to treat the injury with ice therapy an also recommended the use of crutches. (Tr. 203).

**II.     ALJ Decision**

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq*. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether the claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed

in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since April 11, 2007, her amended alleged onset date of disability. (Tr. 15). The ALJ further determined that Plaintiff suffers from several severe impairments including: status post fusion of the cervical spine; degenerative disk disease; status post derangement/strain of the left knee; and carpal tunnel syndrome. (Tr. 16). The ALJ determined that although these impairments are considered severe when combined, they are not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P of 20 C.F.R. Part 404. (Tr. 19).

During the hearing, the ALJ called vocational expert ("VE") Patsy Bramlett to testify. (Tr. 421). The VE determined that Plaintiff's past work consisted of jobs that were classified as exertionally light and also lower semi-skilled. (*Id.*). The VE determined an individual with Plaintiff's RFC should be capable of performing other light work and stated that there are a significant number of light work positions available in the national economy. (Tr. 441). Based on the testimony of the VE and consideration of the record, the ALJ determined that although Plaintiff is unable to perform her past relevant work, she retains the RFC to perform light work. (Tr. 19-22).

Based on his findings, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision. (Tr. 22).

### III. Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed or, in the alternative, remanded for further consideration. (Pl. Br. at 12). Plaintiff asserts that substantial evidence does not support the ALJ's decision denying her disability benefits and improper legal standards were applied. (Pl. Br. at 4).

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (citations omitted).

If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and that the proper legal standards were applied.

      **A.     Substantial Evidence Supports the ALJ's Decision That Plaintiff Has Not Been Under a Disability Through the Date of His Decision.**

Plaintiff contends that the ALJ disregarded medical evidence relating to her pain treatment in reaching his conclusion. (Pl. Br. at 9). Specifically, Plaintiff asserts that the ALJ disregarded the opinion of her long-term treating physician, Dr. Rafael, without explanation. (Pl. Br. at 10-12).

In determining disability, the ALJ must give substantial weight to the opinion of the treating physician, unless "good cause" is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). However, the claimant bears the burden of proving the existence of a disability. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The court applies a three-part standard when a claimant attempts to establish a disability through her own subjective testimony. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also* 20 C.F.R. §

416.929.  The standard requires:  (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.  *Holt*, 921 F.2d at 1223.

The court finds Plaintiff's argument alleging the ALJ discounted the opinion of her long-term physician is without merit.  In determining whether a claimant is disabled, the ALJ frequently refers to the claimant's medical history and records throughout the five-step analysis.  In this case, the ALJ reviewed Plaintiff's consultations by Dr. Waddell, Dr. Luckett, Dr. Treimer, Dr. Murray, and Dr. O'Brien.  (Tr. 16-18).  The ALJ stated in his decision that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." (Tr. 19).  The substance of the ALJ's decision demonstrates that he indeed considered of Plaintiff's medical evidence in reaching his conclusion.

Plaintiff specifically argues that the ALJ rejected the opinion of Dr. Rafael at O'Brien Orthopedics, whom Plaintiff contends is her long-term treating physician.  (Pl. Br. at 10, 12).  During the hearing, Plaintiff's attorney maintained:

> the only other opinion that we could refer to would be Dr. Rafael in Exhibit 8F.  He continuously states that he doesn't expect the symptoms to resolve or says the prognosis is guarded and very poor and he is prescribing pain medications, so I would offer that at least for credibility finding, if not RFC.

(Tr. 439-40).  A review of Plaintiff's medical records covering over a decade reveal that Dr. Rafael treated Plaintiff only on two occasions.  (Tr. 172-75).  On all other visits to O'Brien Orthopedics, Plaintiff was treated by Dr. O'Brien for a period of four years.  (Tr. 128-54, 176-84).  Plaintiff's

9

attorney's contention that Dr. Rafael "continuously" stated that he did not expect Plaintiff's symptoms to resolve might be an accurate description of Plaintiff's two consultations with Dr. Rafael, but it is unreasonable to rely on these two visits as a basis for summarizing Plaintiff's entire medical history and conclusively determining her to be disabled. Plaintiff's characterization of Dr. Rafael as her long-term treating physician is not supported by the record.[4]

The court finds that the ALJ reasonably relied on the medical opinions of physicians who consistently treated Plaintiff during and prior to her alleged onset of disability and that the ALJ's consideration of these medical opinions is sufficiently stated in the decision and order of dismissal. Additionally, the court finds the ALJ considered all evidence in the record, but Plaintiff failed to meet her burden of proving the existence of a disability. Therefore, there was substantial evidence to support the ALJ's decision that Plaintiff was not under a disability, and Plaintiff's argument that the ALJ discounted the medical opinion of her long-term treating physician is without merit.

### B. The ALJ Complied with His Duty to Develop the Record.

The Commissioner construes Plaintiff's brief to present a second argument asserting that the ALJ failed to fully develop the record by refusing to order a consultative examination ("CE"). (Def. Br. at 11). At the hearing, Plaintiff's counsel requested a post-hearing CE because there was not one in the record. (Tr. 438). The ALJ denied the motion for a CE based on the availability of

---

[4]Moreover, alternatively, even if Dr. Rafael could be viewed as a treating physician (and to be sure, the court concludes he could not), it does not appear that he offered any opinion that would be helpful to Plaintiff's disability assertion in this case. Indeed, after Dr. Rafael saw Plaintiff on two occasions, his opinions substantively were no different that those already reached by Dr. O'Brien (who saw her over a four year period). And even if Dr. Rafael could be viewed as offering an opinion that was more helpful to Plaintiff than those reached by Dr. O'Brien and the other practitioners who saw her (and again he could not), the ALJ would have been entitled to disregard (or at least limit) any such opinion that was inconsistent with the medical evidence in the record.

medical evidence and the fact that Plaintiff had insurance. (Tr. 439). According to the ALJ, CEs are traditionally ordered by an ALJ when claimants "can't get medical evidence and they don't have insurance." (*Id.*). At the end of the hearing, Plaintiff's attorney renewed his request for the CE and the ALJ replied that a CE was not needed based on the availability of updated medical records. (Tr. 444).

Although the ALJ has the duty to develop the record fully and fairly, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Additionally, "the administrative law judge is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the administrative law judge to render a decision." *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Ultimately, the burden is on the claimant to prove the existence of a disability, and the claimant is also responsible for producing supporting evidence. *Carnes*, 936 F.2d at 1218; *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

As the court has previously noted, Plaintiff presented the ALJ with substantial medical evidence, and he considered the medical opinions of physicians who treated Plaintiff consistently. (*See* Tr. 13-23). He also considered Plaintiff's RFC as well as testimony from the VE. (Tr. 421-24, 440-43). Other than what is contained in the record, Plaintiff did not submit any additional information to prove the existence of a disability.

In light of the above, the court finds that there is no showing of prejudice in the ALJ's development of the record and that he reasonably relied on available and substantial medical

evidence in rendering his decision. It was unnecessary for the ALJ to order the CE, and the court, therefore, finds the ALJ complied with his duty to develop the record.

## VII. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this ____21st____ day of June, 2010.

_____
**R. DAVID PROCTOR**
UNITED   STATES   DISTRICT   JUDGE